IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | NO. CR-07-0338-JF |
| | ) | |
| v. | ) | |
| | ) | DECLARATION OF GEORGE BRITTON |
| SIMON S. YUAN, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF GEORGE BRITTON**

I, George Britton, do hereby declare as follows:

1. I am a Special Agent with the Criminal Investigation Division of the Internal Revenue Service. My post of duty is San Francisco, California. As a Special Agent, I investigate tax crimes. In the course of my duties, I was assigned to investigate the tax case of Simon Yuan.

2. As part of my investigation, I estimated the unreported cash wage expenses of Hunan Garden Restaurant by interviewing two kitchen staff employees, Jesus Amaya and Rong Qia Kuang. A copy of those interviews is attached as Exhibits A and B hereto. I also examined the living standard of Simon and Sue Yuan.

3. Jesus Amaya (Amaya) stated that from 2001 through November 2004 he was paid his first 80 hours per two weeks in check, and any overtime was paid by cash. Amaya estimated that

US v. Yuan, US, Case
No. CR-07-0338-JF
Declaration of George Britton

Exhibit 1

he was paid approximately $250-270 in cash every two weeks, and was paid $540 every two weeks by check. As a percentage, this equated to approximately 33% of Amaya's wages not being reported as expenses on the corporate tax returns.

4. Kuang stated that his salary was at most $2,500 per month. Of the $2,500 paid to Kuang, $1,100 was paid in check, $1,400 was paid in cash. As a percentage, at most 56% of Kuang's wages were not reported on the corporate income tax returns.

5. It is noted that there is an important distinction between kitchen staff employees who receive part of their salary in cash, part in check, and wait staff employees who receive their base salary via check, and their tips in cash. Hunan Garden Restaurant did not report tips it received as income, nor did it report tips paid to employees as wages. This is an appropriate accounting method for tips. I contend that when estimating the unreported wage expense, those employees who receive salary only (i.e. kitchen staff) should be included.

6. The Wage expense per the corporate tax returns were based on expenses recorded in a Quickbooks file by Simon and/or Sue Yuan. Based on payroll records maintained in Quickbooks, salaried employees (excluding the owners Simon and Sue Yuan) were the following amounts for the fiscal years ended September 30, 2002, 2003, and 2004:

| 2002 | $34,400 |
|------|---------|
| 2003 | $40,500 |
| 2004 | $46,450 |

//
//

US v. Yuan, US, Case
No. CR-07-0338-JF
Declaration of George Britton                    2

7. Using the highest percentage (56%) of potentially unreported wages based on interviews of employees, total wages are as follows:

| | |
|---|---|
| 2002 | $78,180 |
| 2003 | $92,045 |
| 2004 | $105,568 |

And potentially unreported cash wages for the three years are as follows:

| | |
|---|---|
| 2002 | $43,780 |
| 2003 | $51,545 |
| 2004 | $59,118 |

8. In addition, Hunan Garden Restaurant has contended that three employees were not on the Quickbooks payroll records at all. Hunan Garden Restaurant was unable to provide Social Security Numbers for all three of the alleged employees, and could provide only first names for two of the employees. These employees were only identified as "Jessie," "Tony," and Ti Su Chen. As with the other employees who purportedly received cash wages, Hunan Garden Restaurant nor Simon Yuan kept records of the cash amounts paid to these three employees. In addition, Hunan Garden Restaurant nor Simon Yuan provided any indication the time periods these three employees worked at the restaurant. As such, I contend that with no further

//
//

US v. Yuan, US, Case
No. CR-07-0338-JF
Declaration of George Britton                3

supporting documentation, only a nominal amount of wage expense is appropriate for these three undocumented and unsubstantiated employees as follows:

| | |
|---|---|
| 2002 | $20,500 |
| 2003 | $20,500 |
| 2004 | $20,500 |

9. In total, I contend that the potentially unreported cash wage expenses (taking into consideration the 56% and the three unreported employees) is as follows:

| | |
|---|---|
| 2002 | $64,280 |
| 2003 | $72,045 |
| 2004 | $79,618 |

10. This potentially unreported cash wage expenses was then used to calculate criminal tax due and owing. The Cooperating Revenue Agent, Dan Sutherland, used the IRS Revenue Agent Report software to calculate corrected tax due and owing. The civil tax due and owing for the unreported gross receipts is greater than the criminal tax due and owing. The criminal tax due and owing, as updated, is $79,439, computed as follows:

| | |
|---|---|
| 2002 | $57,490 |
| 2003 | $12,290 |
| 2004 | $9,659 |

US v. Yuan, US, Case
No. CR-07-0338-JF
Declaration of George Britton                4

11. Sue Yuan stated during the initial interview that she deposited the unreported proceeds into a joint checking bank account held at Washington Mutual Bank, account number 861-1699858. Sue Yuan stated to me that she issued checks from this bank account for personal and household expenses. Sue Yuan stated the personal expenses included child's tuition and monthly mortgage. A review of cancelled checks issued from this checking account includes payments to Discover credit card, Palo Alto Cleaning, Mercury Casualty Company, Macy's, and Pacific Gas & Electric. A review of checks issued from account number 861-1699858 between January 2000 through September 30, 2004 showed that the name of Simon Yuan was signed to over one-half of the checks. Checks endorsed with a signature appearing to match "Simon Yuan" included payment's to the bank which held the mortgage on the Yuan's residence, and also the bank which held a mortgage on the business property.

12. The residential mortgages for the Yuan's home were held by Washington Mutual. From January 2001 through February 2003 the monthly payments to Washington Mutual ranged from at least $4,745.37 to at most $6,843.06. In addition, Simon and Sue Yuan were responsible for a loan on their restaurant's property and a separate business loan. The restaurant building mortgage and business loan were held at Cathay Bank. Payments made to Cathay bank for the business mortgage ranged from $3,968.94 to $4,334.32 per month. A review of the cancelled checks issued from Washington Mutual checking account number 861-1699858 from January 2000 through February 2005 show that of the 88 checks issued to Cathay Bank and Washington Mutual, 83 of the checks bore the signature appearing to match "Simon Yuan," 1 check bore the signature appearing to match "Sue Yuan," and 4 checks bore un-legible signatures.

13. Simon and Sue Yuan also kept currency at their residence. During the search warrant executed on the day of Sue Yuan's interview, $8,115 of currency was found at three separate locations of the residence. The largest amount of currency in one location totaled $4,814.

14. Simon and Sue Yuan submitted a Uniform Residential Loan Application to Washington Mutual Bank for a $995,000 mortgage on their residence at 949 Altos Oaks Drive, Los Altos, California. The mortgage application was dated November 4, 2003. The application appears to bear the signature of both Simon and Sue Yuan. The loan application listed Simon Yuan as a self-employed manager and co-owner of Hunan Garden Restaurant. The loan

US v. Yuan, US, Case
No. CR-07-0338-JF
Declaration of George Britton                5

application listed Sue Yuan as the owner of Hunan Garden Restaurant. The application listed both Simon and Sue's base monthly employee income as $9,500 a month, for a total of $19,000 per month. This equates to $228,000 per year in income. On their 2003 personal income tax return Form 1040, Simon and Sue Yuan reported total wage income of for the both of them as $76,200 from Hunan Garden Restaurant. This represents a difference of $151,800 for the year. The unreported income as calculated by me for 2003 was $197,336.

15. David Rollins, business broker, indicated during consensually monitored conversations with an UCA that Sue Yuan spent the unreported business proceeds on personal luxuries. In particular, David Rollins said during the May 2, 2005 recording that Sue Yuan "gets to travel the world, drives nice cars, gets to play, get her nails done." During the June 2, 2005 interview, Sue Yuan said that she frequently travels to Taipei, Taiwan to visit her parents, and to Nanjin to visit her friends. During the May 5, 2005 recording David Rollins said that the approximately $20,000 a month unreported from the restaurant was for Sue Yuan's "Mahjong, Nordstrom's, and Neiman Marcus." Mahjong refers to a gambling game, usually played in personal residences known as Mahjong Houses. On May 10, 2005, Gloria Shih, an assistant to David Rollins and personal friend of Sue Yuan stated in a consensually monitored recording that with the unreported cash Sue Yuan "buy all the expensive stuff, jewelry, gamble. That's the way she wants to live… And she's leasing a Mercedes, and she pay one-thousand a month." According to DMV records, Sue Yuan has owned two separate Mercedes S430 vehicles, a 2004 and 2000 model years. The 2004 Mercedes was leased through Chase Manhattan Auto Finance and was delivered on or about December 31, 2003. During the search warrant, payment advices to Chase Manhattan Auto Finance were located showing monthly payments of approximately $1,200 per month. The 2000 Mercedes was sold on or about February 28, 2004.

//

//

16. Gloria Shih further stated in recordings that Sue Yuan, "She buy all the fancy stuff, jewelries, you know only Channel, Nieman Marcus stuff." A review of cancelled checks issued from Simon and Sue Yuan's joint personal checking account number 8611699858 at Washington Mutual Bank includes payments to Bloomingdales, Discover credit card, Macy's, American Express, Fashion House, Neiman Marcus Stores, New Beauty, and Saks Fifth Avenue.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on 1/18/2008.

GEORGE BRITTON
Special Agent, IRS, C.I.D.

US v. Yuan, US, Case
No. CR-07-0338-JF
**Declaration of George Britton**         7

# Internal Revenue Service
# Criminal Investigation



# Memorandum of Interview

---

| | | | |
|---|---|---|---|
| **In Re:** | SUSUE & SIMON YUAN | **Location:** | Residence of Rong Kuang |
| **Investigation #:** | 940530287 | | 333 Silliman Street |
| **Date:** | December 2, 2005 | | San Francisco, CA 94134 |
| **Time:** | Approx. 10:10 A.M. – 10:40 A.M. | | |
| **Participants:** | Rong Kuang, Cook/Witness | | |
| | George Britton, Special Agent | | |
| | Thomas Lavin, Special Agent | | |
| | Sandy Chiu, Special Agent | | |

On December 2, 2005, Special Agents (S/A) George Britton and Thomas Lavin attempted to interview Rong Kuang (hereafter Kuang) at the above address. S/As Britton and Lavin identified themselves as Special Agents with the Internal Revenue Service Criminal Investigation and displayed their credentials for Kuang's inspection. Kuang said that he did not speak English, and preferred communicating in Cantonese. S/A Sandy Chiu spoke with Kuang via telephone in Cantonese. Kuang agreed to answer the agents' questions and invited S/A Britton and S/A Lavin into his home. S/As Britton and Lavin did not ask any questions of Kuang until S/A Chiu arrived at Kuang's residence. Most of the interview was conducted / translated in Cantonese by S/A Chiu.

S/A Britton advised Kuang that he was not the subject of the investigation, and the Special Agents had some questions regarding Kuang's employer, HUNAN GARDEN RESTAURANT (hereafter HGR or the restaurant). In response to the Special Agents' questioning, Kuang provided in substance the following information:

1. Kuang provided his CDL number A5671512 for the Special Agent's inspection. Kuang's CDL listed his birth date as November 2, 1952. His full name was listed as Rong Qai Kuang.

2. Kuang has worked on and off at HGR since it opened in approximately 1998. In the past, he left HGR for 2-3 months. He also left for about a year in June, 2003. He currently works at the restaurant. Kuang works 6 days a week, and is off on Mondays.

3. Kuang works in the kitchen as a cook. He used to work as the chef, but SIMON YUAN (hereafter SIMON) now runs the kitchen.

4. S/A Britton displayed a copy of California Driver's License number N6682528 photograph of SIMON and asked Kuang to identify the photo. Kuang stated that it was SIMON. SIMON was also known by a Chinese knick-name which means "third brother." SIMON is at HGR every day except Saturday morning and all day Sunday. SIMON arrives at the restaurant at approximately 6:00 P.M.

5. S/A Britton displayed a copy of California Driver's License number A1028734 photograph of SUSUE YUAN (hereafter SUSUE or the wife) and asked him to identify the photo. Kuang stated that it was the wife of SIMON. SUSUE sometimes worked at the restaurant as the hostess.

Exhibit 1A

6. When asked who opens the restaurant on the days SIMON and SUSUE do not work, Kuang said that "May" LNU is a hostess/waitress who has keys to the restaurant. Kuang said that the employees know what needs to be done at the restaurant without SIMON and SUSUE's direction.

7. May has worked at the restaurant since it opened. May works as the hostess, cashier, and waitress. May works 6 days a week.

8. "Cindy" LNU has worked at HGR for approximately 1 year. She works as a hostess/cashier. Cindy is in her 40s, does not wear glasses, and works 4-5 days a week.

9. Each waiter is responsible for collecting the ticket from their table. They give the payment to the cashier, who is in charge of the register.

10. The hostess, either May or Cindy usually closed out the cash drawer at the end of the day. Occasionally SIMON closed out the register. When May or Cindy close the register, they bundle up the cash and the tickets and usually provide them to SIMON. On a couple of occasions, they provided the cash and tickets to SUSUE.

11. Kuang does not socialize with SIMON or SUSUE outside of work.

12. Kuang does not know who does the accounting for HGR.

13. SIMON handed out payroll to the employees. SIMON gave the payment in person on the 2nd and 17th of each month. The payment was made in an envelope.

14. Kuang was paid partly in check, partly by cash. When he started, Kuang was paid $2200 per month; $1200 in check and $1000 in cash. Kuang is now paid $2500 per month; $1100 in check and $1400 in cash. Since the IRS-CI search warrant, he is paid all in check.

15. Kuang said that everyone working in the kitchen of HGR was paid by a combination of cash and check. They received the cash in the same envelope as the payroll check. The cash was in all different denominations. Kuang did not know where SIMON got the cash. SUSUE occasionally gave the employees their payroll. The payroll was always paid at the restaurant.

16. The kitchen staff usually did not receive tips. If there was a take-out order over $1,000, then SIMON gave the kitchen staff $20 to split among themselves.

17. No family member of Kuang's worked at the restaurant. Kuang provided his home telephone number of (415) 368-3375 and (415) 497-7774 as his cell phone number.

18. SIMON told Kuang that the IRS-CI did the search warrant regarding a tax matter.

I prepared this memorandum on December 2, 2005, after refreshing my memory from notes made during and immediately after the interview of Rong Kuang on December, 2005.

George Britton
Special Agent

I certify that this memorandum has recorded in it a summary of all pertinent matters discussed with Rong Kuang on December 2, 2005.

Thomas Lavin
Special Agent

Sandy Chiu
Special Agent

3

# Internal Revenue Service
# Criminal Investigation

# Memorandum of Interview



| | | | |
|---|---|---|---|
| **In Re:** | SUSUE & SIMON YUAN | **Location** | Residence of Jesus Amaya |
| **Investigation #:** | 940530287 | | 4420 Bassett Drive, Apt #3 |
| **Date:** | December 12, 2005 | | San Jose, CA 94054 |
| **Time:** | Approximately 8:55 A.M. – 9:50 A.M. | | |
| **Participants:** | Jesus Jose Amaya, Dishwasher / Witness | | |
| | George Britton, Special Agent | | |
| | Bryan Wong, Special Agent | | |
| | Melissa Bravo, Special Agent | | |

As previously arranged, on December 12, 2005 at approximately 8:55 A.M., Special Agent (S/A) George Britton, S/A Bryan Wong, and S/A Melissa Bravo interviewed Jesus Jose Amaya (hereafter Amaya) at the above address. S/As Britton, Wong, and Bravo identified themselves as Special Agents with the Internal Revenue Service Criminal Investigation and displayed their credentials for Amaya's inspection.

Amaya said he understood some English, and would ask S/A Bravo to translate as needed. Portions of the interview were translated from Spanish to English and English to Spanish by S/A Bravo. S/A Bravo translated Spanish to English for S/A Britton and S/A Wong.

S/A Britton advised Amaya that he was not the subject of the investigation, and the Special Agents had some questions regarding one of Amaya's employers. In response to the Special Agents' questioning, Amaya provided in substance the following information:

1. Amaya has worked at HUNAN GARDEN RESTAURANT (hereafter HGR or the restaurant) since 2001. He works in the kitchen as a dishwasher, and does some preparation of vegetables. He did not have any formal training, he taught himself since the job is "not hard." Amaya works both the lunch and dinner shifts at the restaurant six days a week. Amaya is currently employed at HGR. Amaya found the job through one of his friends, Jesus Miguel LNU. Jesus Miguel LNU worked at HGR as a cook, but he quit approximately two years ago.

2. SIMON is the "boss" of the restaurant. SIMON is the owner and manager of the restaurant. SIMON's wife (hereafter referred to as SUSUE) also owns the restaurant. Amaya did not know SIMON's wife's name.

3. SIMON worked at the restaurant. SIMON worked almost all the time. SIMON did many of the duties at the restaurant, including cooking and waiting tables. SIMON referred to himself as the chef.

4. SUSUE also worked at the restaurant. She was not at the restaurant very often, usually only two hours at a time. SUSUE was at the restaurant only three days a week. SUSUE's duties included taking food to the customer.

5. Amaya only knows SIMON and SUSUE from work. He does not socialize with them outside

Exhibit 1B

of work. Amaya has not been to SIMON and SUSUE's home. SIMON and SUSUE always seemed to be working.

6. Amaya described the customer order process. The waiters took the customers' orders. A copy of the ticket was taken to the kitchen for the kitchen staff to prepare the order. Once the customer was ready to pay, the waiter totaled the bill and gave it to the customer. The customer paid the cashier. The cashiers were Kathy LNU and another unidentified female. The unidentified female was approximately 25 years old, with shoulder length black hair. At the end of the day, the cashier totaled the register and bundled the customer tickets together. SIMON took approximately one week worth of tickets home with him at a time. SIMON also took the cash from the register home with him.

7. SUSUE did the accounting for the restaurant. Amaya assumed that SUSUE counted the money at home. SUSUE did not work any other job except for the restaurant.

8. A total of seven people work in the kitchen. There are four cooks, one food preparer, one dishwasher, and one employee who takes the customer tickets to the cooks. In addition to the kitchen staff, there are three waiters and two cashiers. Only one cashier works at a time.

9. Amaya was paid every two weeks. He was paid $7.25 per hour. From the time that Amaya started in 2001 through November 2004, he was paid partly by check, partly by cash. His first 80 hours every two weeks was paid by check. Any overtime he worked was paid in cash. HGR did not withhold any taxes from the amounts paid in cash. Amaya worked approximately 145 hours every two weeks. Amaya said that he was paid approximately $250-$270 in cash every two weeks. He was paid approximately $540 by check every two weeks.

10. Amaya provided the Special Agents his pay stub for pay period ended May 31, 2003, check number 2658. He was paid $600.00 by check.

11. In November 2004, Amaya had an issue with his Social Security Number (SSN). He received a letter stating that the SSN he was using was not correct. He showed the letter to SIMON and SIMON told Amaya that he would pay Amaya all in cash. Amaya is still paid in all cash.

12. After November 2004, Amaya was paid approximately $800 every two weeks in cash. Amaya provided two adding machine tapes which document the amount of cash he was paid. Amaya said that for the last pay period, he was paid $862, which is more than he usually makes in a two week period. He usually receives $804 every two weeks.

13. SIMON gave Amaya his wages in an envelope. The cash portion of his payment was almost always in $20 bills. SIMON paid the other employees in an envelope also.

14. Amaya knew of two other employees who were paid in a combination of cash and check. The other kitchen staff were reluctant to talk about how they were paid. After the IRS visited the restaurant, the other employees were paid all by check. Amaya thinks that he is the only person who is currently paid by cash.

15. Amaya is not paid tips. Only waiters and busboys are paid tips.

16. Two or three cooks have left the restaurant in the past 2-3 months.

17. Amaya provided his date of birth as January 2, 1967. He provided his home telephone number as (408) 970-9147.

18. Amaya is a Mexican citizen. He does not have United States immigration status. SIMON never asked Amaya about his immigration status. Amaya never told SIMON his immigration status.

Amaya provided S/A Britton with three items; 1) an adding tape totaling $862, 2) an adding tape totaling $804, and 3) a pay stub for period ending May 31, 2003. Amaya initial and dated the back of each item.

S/A Britton thanked Amaya for his time. The interview ended at approximately 9:50 A.M.

I prepared this memorandum on December 12, 2005, after refreshing my memory from notes made during and immediately after the interview of Jesus Jose Amaya on December 12, 2005.

George Britton
Special Agent

I certify that this memorandum has recorded in it a summary of all pertinent matters discussed with Jesus Jose Amaya on December 12, 2005.

Bryan Wong
Special Agent

Melissa Bravo
Special Agent